NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHARLES W. HAGE,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>AMERICAN BOARD OF OBSTETRICS<br>AND GYNECOLOGY,<br><br>　　　　　　　Defendant. | Civ. No. 19-21198<br><br>**OPINION** |

THOMPSON, U.S.D.J.

## **INTRODUCTION**

This matter comes before the Court upon the Motion to Dismiss filed by Defendant American Board of Obstetrics and Gynecology ("Defendant") (ECF No. 6) and the Motions for Summary Judgment and for Leave to File an Amended Complaint filed by Plaintiff Charles W. Hage ("Plaintiff") (ECF No. 11). The Court has decided the Motions based upon the written submissions of the parties and without oral argument, pursuant to Local Civil Rule 78.1(b). For the reasons stated herein, Defendant's Motion to Dismiss (ECF No. 6) is granted, Plaintiff's Motion for Summary Judgment (ECF No. 11) is moot, and Plaintiff's Motion for Leave to File an Amended Complaint (ECF No. 11) is denied.

## **BACKGROUND**

**I.　Factual Background**

This action is brought under the New Jersey Consumer Fraud Act ("CFA"), N.J. Stat. Ann. § 56:8-1 *et seq.* Defendant offers certifications to physicians specializing in Obstetrics and

1

Gynecology ("OB-GYN"). (2017 MOC Bulletin at 7, Def.'s Ex. E, ECF No. 6-9.) Certification is a voluntary process independent from the process of obtaining a license to practice medicine. (*See id.* at 2, 7.) To remain certified, physicians—referred to as "Diplomates" in the context of the certification process—must satisfy Defendant's "Maintenance of Certification" ("MOC") requirements in six-year cycles. (*Id.* at 8, 32–33.) These requirements are subject to change each year. (*Id.* at 8.) Certifications expire if Diplomates do not comply with the annual MOC protocols. (*Id.* at 7.)

Plaintiff is an OB-GYN physician who was certified by Defendant for several years. (Hage Credentials Profile at 1, Ex. A, ECF No. 11-1.) In 2002, Plaintiff developed a condition that diminished the depth perception in his right eye. (Hage Aff. ¶ 8, ECF No. 11-2.) Unable to perform surgical or intrusive examinations, Plaintiff was forced to close his medical office and seek employment in medical administrative positions. (*Id.*) Despite his impairment, Plaintiff continued to seek recertification. (*See* Hage Credentials Profile at 1; Kaplan Correspondence at 3, Def.'s Ex. I, ECF No. 6-13.)

In each year from 2007 to 2014, and in 2017, Plaintiff submitted an application for certification, maintenance of certification, or "Continuing Medical Education" ("CME") credits. (Kaplan Correspondence at 3.) Each application that Plaintiff submitted to Defendant from 2007 onward contained a "Venue and Jurisdiction" provision, which provided:

> I agree that if any dispute arises between myself and [Defendant] with regard to my qualification for or my taking of the examination, the results of the examination, and/or any decision made by [Defendant] with regard to my qualification for, and any entitlement I may have to continue to qualify for, a Certificate or Diploma, that dispute shall be had, held, and adjudicated in an appropriate court in Dallas County, Texas. I hereby consent to the jurisdiction and the laws of the State of Texas and exclusive venue in Dallas County, Texas with regard to any dispute that may arise with regard to the conduct of the examination or my qualification for, and any entitlement I may have to continue to qualify for,

2

> a Certificate or Diploma or in connection with the manner of conducting any examination or the results thereof, or my rights to membership in [the American Board of Obstetrics and Gynecology] or to any privileges of such membership.

(2017 Application ¶ 6, Def.'s Ex. J, ECF No. 6-14; Kaplan Correspondence at 3 (indicating that Plaintiff agreed to these terms in each application he submitted between 2007 and 2014 and in 2017).) The provision added that "any claim, dispute, or controversy . . . by [Plaintiff] or [Defendant] against the other shall be resolved in an appropriate court of law located in Dallas County, Texas." (2017 Application ¶ 7.) Each application also contained a waiver of the parties' right to a jury trial "of any and all issues arising in any action or proceeding between [Plaintiff] and [Defendant]." (*Id.*)[1]

By 2013, MOC protocols required OB-GYN specialists to take a written examination and pay annual fees to maintain their certifications. (Hage Aff. ¶ 10.) In 2013, Plaintiff informed Defendant of his visual impairment and applied for an exemption from certain MOC requirements, including the written examination, for that year. (*Id.* ¶ 11; Wendel Correspondence at 1, Def.'s Ex. F, ECF No. 6-10.) Defendant granted Plaintiff a one-time exemption. (Wendel Correspondence at 1.) Defendant advised Plaintiff, "If you continue in MOC in another cycle, you must request the exemption again." (*Id.*) Plaintiff avers that, after 2013, "any further MOC exemptions were unconscionably refused for no apparent reason." (Hage Aff. ¶ 11.) Plaintiff did not satisfy MOC requirements during 2013 or afterwards. (*Id.*)

---

[1] Before 2016, Diplomates were required to answer "Yes" to the statement "I have read and agree to the Terms of Application" on their applications. (Kaplan Correspondence at 4.) If Diplomates clicked on the words "Terms and Conditions," a separate web page displayed the Terms and Conditions. (*Id.*) From 2016 onward, applications contained a text box with the Terms of Service, and Diplomates were required to answer "Yes" to the statement "I have read and agree to the Terms of Application." (*Id.* at 3–4.)

OB-GYN physicians who fail to complete the required MOC protocols "lose their Diplomate status." (2017 MOC Bulletin at 29.) Physicians must take a re-entry examination to regain that status. (*Id.*) Diplomates with time-limited certificates can be designated as "Retired Diplomates," which means that they are not required to participate in MOC requirements. (*Id.* at 27.) Retired Diplomates can request to regain active Diplomate status if they become clinically active and complete a re-entry process. (Kaplan Correspondence at 2.)

On January 25, 2015, Dr. George Wendel, an employee of Defendant, confirmed in an e-mail to Plaintiff that Retired Diplomates "are not required by [Defendant] to participate in MOC. They may participate in CME only each year." (Wendel 2015 Correspondence at 1, Def.'s Ex. H, ECF No. 6-12.) Dr. Wendel added, "The [American Board of Medical Specialties ('ABMS')] does not display retired certification status and will indicate that certification is expired. We have no control over the interpretation of the retired Diplomate status. Employers are also free to require participation in MOC for their employees." (*Id.*) ABMS, a non-profit organization, establishes standards for MOC and publishes a database of physicians' credentials. (Ramin Correspondence at 1, Pl.'s Ex. G, ECF No. 11-2; Pl.'s SUMF ¶ 4, ECF No. 13-3.)

On January 26, 2015, Plaintiff e-mailed Jennifer Thiem, an employee of Defendant, requesting to be designated as a Retired Diplomate. (Thiem Correspondence at 1–2, Def.'s Ex. G, ECF No. 6-11.) Ms. Thiem replied, "[Defendant] will move your certification status to a Retired Diplomate at your request. Your [American Board of Obstetrics and Gynecology] web page certification status will indicate that you are retired and no longer required to meet MOC requirements." (*Id.* at 1.) Defendant accordingly changed Plaintiff's certification status to "Retired Diplomate." (Ramin Correspondence at 1.)

4

On November 2, 2017, Plaintiff was offered a job as Medical Director of an insurance company. (Pl.'s Ex. E, ECF No. 11-2.) Plaintiff alleges that he lost this job offer because Defendant would not "provide the re-assurance [Plaintiff's prospective employer] required related to [his] certification and MOC status." (Hage Aff. ¶ 18; *see also* Urbano Correspondence at 1, Pl.'s Ex. F, ECF No. 11-2.)

In December 2017, Defendant granted Plaintiff a one-time exemption to allow him to apply for re-entry even though he was no longer clinically active. (Kaplan Correspondence at 1.) One year later, Defendant denied Plaintiff's request for another exemption from MOC requirements or the re-entry process. (*Id.*)

## II.     Procedural History

On October 11, 2019, Plaintiff filed the Complaint in the Superior Court of New Jersey, Law Division, Monmouth County. (*See* Compl., Ex. A, ECF No. 1.) Plaintiff alleges one count in the Complaint: violation of the New Jersey CFA, N.J. Stat. Ann. § 56:8-1 *et seq.* (Compl. ¶¶ 14–17.) Plaintiff submits that Defendant "requires annual Maintenance Note testing of disabled [OB-GYN] specialists who are thereby hindered from employment as [OB-GYN] specialists in other than an active patient practice." (*Id.* ¶ 15.) Plaintiff adds, "It is arbitrary, unreasonable, unconscionable, unfair, and otherwise violative of [Defendant's] obligations under the CFA to deal in good faith . . . for [Defendant] to refuse to accommodate [Plaintiff's] disability without requiring annual, costly, pointless, and unnecessary Maintenance Note testing." (*Id.* ¶ 16.) Plaintiff contends that Defendant's conduct caused him to "suffer the loss of employment." (*Id.* ¶ 17.)

On December 9, 2019, Defendant timely removed this case based on this Court's diversity jurisdiction. (ECF No. 1.) Defendant is a Delaware non-profit organization with its

headquarters in Texas. (Compl. ¶ 2.) Plaintiff is a resident of New Jersey. (*Id.* ¶ 1.) On December 27, 2019, after receiving an extension to answer the Complaint, Defendant filed a Motion to Dismiss on the grounds of *forum non conveniens* and failure to state a claim. (ECF No. 6.) On January 28, 2020, Plaintiff filed an Opposition to Defendant's Motion to Dismiss, as well as a Motion for Summary Judgment and a Motion for Leave to File an Amended Complaint. (ECF No. 11.) On February 14, 2020, Defendant filed a brief replying to Plaintiff's Opposition and opposing Plaintiff's Motions. (ECF No. 12.) On February 27, 2020, Plaintiff filed a brief replying to Defendant's Opposition. (ECF No. 13.) Defendant's Motion to Dismiss, Plaintiff's Motion for Summary Judgment, and Plaintiff's Motion for Leave to File an Amended Complaint are presently before the Court.

## **LEGAL STANDARD**

A *forum non conveniens* dismissal "is a determination that the merits [of a case] should be adjudicated elsewhere." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 432 (2007). "A district court therefore may dispose of an action by a *forum non conveniens* dismissal . . . when considerations of convenience, fairness, and judicial economy so warrant." *Id.* In the absence of a forum-selection clause, a district court considers the following factors in applying the doctrine of *forum non conveniens*:

> (1) the amount of deference to be afforded to plaintiffs' choice of forum; (2) the availability of an adequate alternative forum where defendants are amenable to process and plaintiffs' claims are cognizable; (3) relevant 'private interest' factors affecting the convenience of the litigants; and (4) relevant 'public interest' factors affecting the convenience of the forum.

*Collins v. Mary Kay, Inc.*, 874 F.3d 176, 186 (3d Cir. 2017) (quoting *Kisano Trade & Invest Ltd. v. Lemster*, 737 F.3d 869, 873 (3d Cir. 2013)).

The Supreme Court has instructed that the presence of a forum-selection clause alters this

analysis. *Atl. Marine Const. Co. v. U.S. Dist. Ct. for the W. Dist. of Tex.*, 571 U.S. 49, 63 (2013). First, the plaintiff's choice of forum "merits no weight." *Id.* Second, the court "must deem the private-interest factors to weigh entirely in favor of the preselected forum." *Id.* at 64. Therefore, under *Atlantic Marine*, the remaining factors for the Court to consider are (i) the availability of an adequate alternative forum where Defendant is amenable to process and Plaintiff's claims are cognizable, and (ii) public interest factors. "Because those factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases." *Atl. Marine*, 571 U.S. at 64.

In the absence of a forum-selection clause, "a *defendant* 'invoking *forum non conveniens* ordinarily bears a heavy burden in opposing the plaintiff's chosen forum.'" *Atl. Marine*, 571 U.S. at 66 n.8 (emphasis added) (quoting *Sinochem*, 549 U.S. at 430). "That is because of the 'hars[h] result' of that doctrine: . . . a successful motion under *forum non conveniens* requires dismissal of the case." *Id.* (citation omitted). "Such caution is not warranted, however, when the plaintiff has violated a contractual obligation by filing suit in a forum other than the one specified in a valid forum-selection clause." *Id.* Therefore, the party resisting the application of a forum-selection clause bears a heavy burden of demonstrating that the forum-selection clause should not be enforced. *Collins*, 874 F.3d at 186–87.

*Atlantic Marine* applies to motions to dismiss on *forum non conveniens* grounds. The Supreme Court decided *Atlantic Marine* under 28 U.S.C. § 1404(a). *See* 571 U.S. at 67–68. Section 1404(a) is Congress' codification of the *forum non conveniens* doctrine for transfers *within the federal court system*. *Id.* at 60. "For the remaining set of cases calling for a *nonfederal* [state or foreign] forum, § 1404(a) has no application, but the residual doctrine of *forum non conveniens* 'has continuing application in federal courts.'" *Id.* at 60–61 (emphasis added)

7

(quoting *Sinochem*, 549 U.S. at 430). Because the parties' forum-selection clause points to a state forum, the Court must apply the doctrine of *forum non conveniens*. *See id.* Even so, *Atlantic Marine* applies because "courts should evaluate a forum-selection clause pointing to a nonfederal forum in the same way that they evaluate a forum-selection clause pointing to a federal forum." *Id.* at 61 (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 37 (1988) (Scalia, J., dissenting)); *see also Collins*, 874 F.3d at 186–87 (applying the Supreme Court's analysis in *Atlantic Marine* to affirm a dismissal for *forum non conveniens*).

## DISCUSSION

### I. Motion to Dismiss for *Forum Non Conveniens*

#### A. *Waiver of Forum Non Conveniens*

Plaintiff submits that Defendant waived its ability to seek dismissal for *forum non conveniens* by removing this case to federal court. (Pl.'s Br. at 2–3, ECF No. 11-3.) The Court disagrees. Courts have affirmed dismissals for *forum non conveniens* in cases removed to federal court. *See, e.g.*, *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 235 (1981); *Baumgart v. Fairchild Aircraft Corp.*, 981 F.2d 824, 835 (5th Cir. 1993) (concluding that removal does not bar a defendant from seeking dismissal for *forum non conveniens*). Therefore, Defendant is not precluded from moving to dismiss this case for *forum non conveniens*.

#### B. *Scope of Forum-Selection Clause*

Plaintiff argues that the applications signed by Plaintiff do not relate to (i) his January 2015 "agreement" with Ms. Thiem to list Plaintiff's status as "Retired Diplomate," (ii) Defendant's requirement that Plaintiff comply with re-entry protocols, or (iii) Defendant's failure to confirm Plaintiff's certification status to his prospective employer. (Pl.'s Reply at 4–6, ECF No. 13.) In other words, Plaintiff argues that the scope of the "Venue and Jurisdiction" clause

does not extend to his legal claims.

### 1.     Texas Contract Law Governs Questions of Scope

To determine whether the forum-selection clause encompasses Plaintiff's claims, the Court must first determine what law governs questions regarding the forum-selection clause's scope. The Third Circuit has established that issues of contract interpretation are considered "quintessentially substantive" under *Erie Railroad Co. v. Tompkins*, and that courts should accordingly apply state contract law to assess the scope of a forum-selection clause. *Collins*, 874 F.3d at 181–83 (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)).

Texas contract law governs the Court's analysis of the forum-selection clause's scope. In cases based on diversity jurisdiction, federal courts look to the choice-of-law rules of the state in which the district court sits to determine which state's substantive contract law applies. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). This is true "even where the contract contains a choice-of-law clause." *Collins*, 874 F.3d at 183. "Ordinarily, when parties to a contract have agreed to be governed by the laws of a particular state, New Jersey courts will uphold the contractual choice if it does not violate New Jersey's public policy." *Instructional Sys., Inc. v. Comput. Curriculum Corp.*, 614 A.2d 124, 133 (N.J. 1992). The parties' contractual choice does not govern if:

> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which . . . would be the state of the applicable law in the absence of an effective choice of law by the parties.

*Id.* (citing Restatement (Second) of Conflict of Laws § 187(2) (Am. Law Inst. 1969)). Texas has a substantial relationship to the parties because Defendant's headquarters are in Dallas. (*See*

9

Compl. ¶ 2; *Instructional Sys.*, 614 A.2d at 133 (finding that the state chosen by the parties had a substantial relationship to the parties where one party was headquartered in that state).) Moreover, Plaintiff has not demonstrated why applying Texas contract law to interpret the forum-selection clause's scope would offend the "fundamental policy" of New Jersey, nor that New Jersey has a "materially greater interest" than Texas in determining the scope of the forum-selection clause. *See infra* Section I.D.2. Therefore, the Court applies Texas contract law to determine the scope of the forum-selection clause.

2. The Forum-Selection Clause Encompasses Plaintiff's Claims

In *Collins*, the Third Circuit analyzed Texas contract law to assess the scope of a forum-selection clause. The court explained that Texas courts "have consistently held the language *'any interpretation, dispute, or any aspect related to'* is broad." *Collins*, 874 F.3d at 185 (citing *In re Longoria*, 470 S.W.3d 616, 628 (Tex. App. 2015)); *see also id.* (citing *Barnette v. United Research Co.*, 823 S.W.2d 368, 369–70 (Tex. App. 1991)) ("[C]ourts applying Texas law have held that forum selection clauses with broad language . . . encompass a variety of non-contractual claims, including statutory claims.").

By signing the applications, Plaintiff consented to jurisdiction and exclusive venue in Dallas County, Texas "with regard to *any* dispute that may arise with regard to the conduct of the examination or my qualification for, and any entitlement I may have to continue to qualify for, a Certificate or Diploma or in connection with the manner of conducting any examination . . . or my rights to membership in the [American Board of Obstetrics and Gynecology]." (2017 Application ¶ 6 (emphasis added).) The Applications added, "*any* claim, dispute, or controversy . . . by me or [Defendant] against the other shall be resolved in an appropriate court of law located in Dallas County, Texas." (*Id.* ¶ 7 (emphasis added).) Plaintiff's CFA claim constitutes "any

dispute" under the broad forum-selection clause agreed upon by the parties. Plaintiff's allegations regarding his certification status, Defendant's requirement that Plaintiff comply with re-entry protocols, and Defendant's failure to confirm Plaintiff's certification status with his prospective employer all arose from disputes related to Defendant's examinations or Plaintiff's qualifications for certification. Therefore, the Court concludes that the forum-selection clause encompasses Plaintiff's legal claims.

      C.      *Enforceability of Forum-Selection Clause*

Plaintiff argues that the forum-selection clause is not enforceable because the "Venue and Jurisdiction" provision is "part of a draconian contract of adhesion which targeted physicians could not avoid." (Pl.'s Br. at 7.) The Court applies federal common law when assessing the enforceability of forum selection clauses. *See Collins*, 874 F.3d at 181 (citing *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 877 (3d Cir. 1995)).

"[F]orum selection clauses are 'prima facie valid and should be enforced unless enforcement is shown by the resisting party to be "unreasonable" under the circumstances.'" *Foster v. Chesapeake Ins. Co.*, 933 F.2d 1207, 1219 (3d Cir. 1991) (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972)). For a court to conclude otherwise, the party objecting to enforcement of the clause must establish "(1) that it is the result of fraud or overreaching, (2) that enforcement would violate a strong public policy of the forum, or (3) that enforcement would in the particular circumstances of the case result in litigation in a jurisdiction so seriously inconvenient as to be unreasonable." *Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.*, 709 F.2d 190, 202 (3d Cir. 1983), *cert. denied*, 464 U.S. 938 (1983).

Plaintiff has not demonstrated that the forum-selection clause agreed upon by the parties was the result of fraud or overreaching. The proper inquiry in assessing potential fraud is

11

whether there was "fraud in the inducement of the [forum-selection] clause itself." *MoneyGram Payment Sys., Inc. v. Consorcio Oriental, S.A.*, 65 F. App'x 844, 847 (3d Cir. 2003) (quoting *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403–04 (1967)). Plaintiff has offered no evidence to support a claim of fraud in the inducement. "That there may not have been actual negotiations over the clause does not affect its validity." *Foster*, 933 F.2d at 1219 (citing *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 111 S. Ct. 1522, 1526 (1991)).

Furthermore, enforcement of the forum-selection clause would not violate New Jersey public policy. "New Jersey courts routinely find forum-selection clauses *prima facie* valid and enforceable." *Cadapult Graphic Sys., Inc. v. Tektronix, Inc.*, 98 F. Supp. 2d 560, 566 (D.N.J. 2000) (collecting New Jersey state court cases). The fact that Plaintiff brings his claim under New Jersey law does not supersede New Jersey's preference to enforce forum-selection clauses. *See Mark IV Transp. & Logistics, Inc. v. Nat'l Indep. Contractor Ass'n, Inc.*, 2014 WL 69890, at *3 (D.N.J. Jan. 9, 2014) ("The argument that public policy favors deciding questions under New Jersey law at home is without merit given that New Jersey law generally supports the validity of forum selection clauses.").

Moreover, litigation in Dallas County, Texas would not unduly inconvenience Plaintiff. To demonstrate undue inconvenience, the party objecting to the forum-selection clause must make a "strong showing" that the forum is "so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court." *Foster*, 933 F.2d at 1219; *see also Olde Homestead Golf Club v. Elec. Transaction Sys. Corp.*, 714 F. App'x 186, 190 (3d Cir. 2017) ("[W]here the parties have agreed to a valid forum selection clause, they have, in effect, waived their right to challenge the convenience of the selected forum."). "Mere inconvenience of additional expense is not the test of unreasonableness . . . ." *Danka Funding, L.L.C. v. Page,*

12

*Scrantom, Sprouse, Tucker & Ford, P.C.*, 21 F. Supp. 2d 465, 472 (D.N.J. 1998) (quoting *Cent. Contracting Co. v. Md. Cas. Co.*, 367 F.2d 341, 344 (3d Cir. 1966)). Plaintiff argues that, if this case were litigated in Texas, some of his witnesses may be unavailable and he would be required to surrender his right to a jury trial and retain a Texas attorney. (Pl.'s Br. at 5.) Plaintiff, however, has not demonstrated that he would "for all practical purposes be deprived of his day in court" if he were required to bring his claims in Texas state court. For the foregoing reasons, the forum-selection clause is enforceable.

      D.    *Forum Non Conveniens Analysis*

Having concluded that the forum-selection clause covers the parties' dispute and is enforceable, the Court proceeds to analyze the *Atlantic Marine* factors, recognizing that forum-selection clauses generally control except in unusual cases. *Atl. Marine*, 571 U.S. at 64.

      1.    <u>Availability of Adequate Alternative Forum</u>

"A successful *forum non conveniens* motion . . . requires the availability of an adequate alternative forum." *Wilmot v. Marriott Hurghada Mgmt., Inc.*, 712 F. App'x 200, 203 (3d Cir. 2017) (citing *Piper Aircraft*, 454 U.S. at 254). The inquiry into the availability of an alternative forum will ordinarily be satisfied when the defendant is "'amenable to process' in the other jurisdiction." *Piper Aircraft*, 454 U.S. at 254 n.22 (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 506–07 (1947) (superseded by statute on other grounds)). "An alternative forum is generally adequate if the plaintiff's claim is cognizable in the forum's courts." *Wilmot*, 712 F. App'x at 203 (citing *Piper Aircraft*, 454 U.S. at 254). The alternative forum that the Court must consider is the Texas state court in Dallas County.

Defendants are "amenable to process" where they have consented to jurisdiction in the alternative forum. *See id.* at 204 (concluding that the United Kingdom and Egypt were adequate

13

alternative fora where the defendant consented to jurisdiction and service of process in both countries); *Trotter v. 7R Holdings LLC*, 873 F.3d 435, 443 (3d Cir. 2017) (concluding that the British Virgin Islands could serve as an adequate alternative forum in part because the defendants had "stipulated that they [would] submit themselves to the jurisdiction" of the British Virgin Islands' courts); *Kisano*, 737 F.3d at 873 n.1 (citing *Dahl v. United Techs. Corp.*, 632 F.2d 1027, 1029 (3d Cir. 1980)) (concluding that Israel was an adequate alternative forum where defendants consented to jurisdiction there). Defendant expressly consented to the jurisdiction of the Texas state court by agreeing to the Texas forum-selection clause. Therefore, Defendant is amenable to process in Texas state court.

Moreover, Plaintiff has not argued that his claim is incognizable in Texas, nor has he made any submissions to the Court suggesting that a Texas court could not consider his claims. Accordingly, Plaintiff has not carried his burden of demonstrating that he would be "deprived of any remedy" if required to litigate this case in Texas state court. *See Trotter*, 873 F.3d at 443–44 (quoting *Piper Aircraft*, 454 U.S. at 255) (affirming the district court's finding of an adequate, available alternative forum in part because there was "no danger that [the plaintiffs would] be deprived of any remedy"). Because Plaintiff has not satisfied his burden in this regard, the Court concludes that Texas is an available and adequate alternative forum for purposes of the Court's *forum non conveniens* analysis.

    2. <u>Public Interest Factors</u>

Courts weigh several public interest factors when considering a motion to dismiss for *forum non conveniens*, including:

> the administrative difficulties flowing from court congestion; the "local interest in having localized controversies decided at home"; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the

> action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty.

*Piper Aircraft*, 454 U.S. at 241 n.6 (quoting *Gilbert*, 330 U.S. at 509). This list of factors "is by no means exhaustive, and some factors may not be relevant in the context of a particular case." *Delta Air Lines, Inc. v. Chimet, S.p.A.*, 619 F.3d 288, 295 (3d Cir. 2010) (quoting *Van Cauwenberghe v. Biard*, 486 U.S. 517, 528–29 (1988)).

Plaintiff's briefs only appear to discuss two public interest factors. First, Plaintiff argues that compliance with the forum-selection clause would require Plaintiff to be "subject[ed] to the law of Texas when his claim is based on rights established by a New Jersey statute and far more efficiently litigated in New Jersey." (Pl.'s Br. at 5; *see also id.* at 6 ("The New Jersey judiciary will be more familiar with the CFA and its application than would be the Texas Bar and Judiciary.").)[2] However, Texas law, not New Jersey law, governs disputes between the parties. (2017 Application ¶ 6.) Plaintiff cannot evade the forum agreed upon by the parties by filing an action under New Jersey law and subsequently arguing that a court in New Jersey must thereby hear the action.

Second, Plaintiff maintains that "all relevant activity has taken place in New Jersey" (Pl.'s Br. at 5), but the locus of the alleged conduct appears to be Texas, not New Jersey. Plaintiff lives in New Jersey (Notice of Removal ¶ 7, ECF No. 1), he established a medical practice in New Jersey (Hage Aff. ¶ 2), "his [MOC] activity took place on-line in New Jersey,"

---

[2] Plaintiff discusses three additional factors, arguing that (i) compliance with the forum-selection clause "would require surrender by Plaintiff of his right to a jury trial"; (ii) transfer would "require Plaintiff to retain a Texas attorney"; and (iii) "some or all of Plaintiff's witnesses may be unavailable in Dallas, Texas." (Pl.'s Br. at 5.) Parties' and witnesses' convenience, however, are "not public interests, but private ones." *In re Howmedica Osteonics Corp.*, 867 F.3d 390, 406 (3d Cir. 2017).

15

and he would be required to fulfill MOC requirements in the future by taking tests in New Jersey (Pl.'s Br. at 6–7). However, Defendant's alleged actions or omissions, including consideration of applications, administration of MOC requirements, granting of exemptions from MOC requirements, and failure to advise prospective employers, all likely took place in Texas, where Defendant maintains its headquarters. (Notice of Removal ¶ 6.) Accordingly, Plaintiff's argument that public interest factors weigh in favor of New Jersey is unavailing.

In addition to the public interest factors raised by Plaintiff, the Court considers three other *Gilbert* factors: (i) "the administrative difficulties flowing from court congestion," (ii) avoidance of the application of "foreign law," and (iii) the "unfairness of burdening citizens in an unrelated forum with jury duty." *Piper Aircraft*, 454 U.S. at 241 n.6 (quoting *Gilbert*, 330 U.S. at 509). Regarding the first factor, neither party has submitted relevant data regarding court congestion. Without more information, the Court considers this factor to favor neither forum. Regarding the second factor, the parties agreed in the forum-selection clause that Texas state law governs disputes between them. (2017 Application ¶ 6.) Even if the Texas state court were to determine under its choice-of-law rules that it should apply New Jersey law, New Jersey law is not so foreign to Texas state courts for this factor to tip the balance of the Court's analysis in favor of New Jersey. *See, e.g.*, *Larchmont Farms, Inc. v. Parra*, 941 S.W.2d 93, 95 (Tex. 1997) (concluding that the New Jersey Worker's Compensation Act appropriately governed a case in Texas state courts). Regarding the third factor, the Court has already concluded that Texas is not an "unrelated" forum because Defendant's principal place of business is in Texas. (Notice of Removal ¶ 6.) For the foregoing reasons, Plaintiff has not carried its burden of demonstrating that Texas is not an available, adequate alternative forum or that public factors weigh in favor of litigating this case in New Jersey.

E.  *Remedy*

In § 1404(a) cases, "Congress has replaced the traditional remedy of outright dismissal with transfer." *Atl. Marine*, 571 U.S. at 60 (citing *Sinochem*, 549 U.S. at 430). By contrast, the proper remedy under the residual *forum non conveniens* doctrine is dismissal of the case. *See, e.g.*, *Collins*, 874 F.3d at 179 (affirming a dismissal on *forum non conveniens* grounds); *Trotter*, 873 F.3d at 445 (same). Because Plaintiff has not satisfied his burden of demonstrating that this case should be litigated in a forum other than the one to which the parties agreed, the Court dismisses this case for *forum non conveniens*. The Court need not reach the merits of whether the Complaint fails to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## II.  Plaintiff's Motions

The Court has already concluded that it will dismiss this case for *forum non conveniens*. Therefore, Plaintiff's Motion for Summary Judgment (ECF No. 11) is moot. Because granting Plaintiff leave to amend the Complaint would be futile, Plaintiff's Motion for Leave to File an Amended Complaint (ECF No. 11) is denied. *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (establishing futility of amendment as one reason to deny a motion for leave to amend).

### CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss (ECF No. 6) is granted, Plaintiff's Motion for Summary Judgment (ECF No. 11) is moot, and Plaintiff's Motion for Leave to File an Amended Complaint (ECF No. 11) is denied. An appropriate Order will follow.


Date: June 9, 2020                                              */s/ Anne E. Thompson*
                                                                                    ANNE E. THOMPSON, U.S.D.J.